IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| Shaffin Ali Mohamed; aka Ali | § | |
| Mohamed, et al | § | |
| Debtor(s) | § | Lead Case No. H-07-1122 |
| | § | Judge Sim Lake |
| Travelers Indemnity Company, et al | § | Magistrate Judge Nancy K. Johnson |
| Plaintiff(s) | § | (Adversary No. 06-3393) |
| v. | § | |
| Mohamed Shaffin Ali, et al | § | |
| Defendant(s) | § | |

| | | |
|---|---|---|
| In re: | § | Member Case No. H-07-995 |
| Shaffin Ali Mohamed, et al | § | Judge Sim Lake |
| Debtor(s) | § | Magistrate Judge Nancy K. Johnson |
| | § | (formerly Case No. 05-42695-H2-11) |

| | | |
|---|---|---|
| The Travelers Indemnity Company, | § | |
| Plaintiff | § | Member Case No. 4:07-CV-00638 |
| v. | § | Judge Sim Lake |
| Shaffin Ali Mohamed, M.D., et al | § | Magistrate Judge Nancy K. Johnson |
| Defendant(s) | § | |

## THE UNDAVIA DEFENDANTS' RESPONSE TO TRAVELERS' MOTION FOR CASE TERMINATION SANCTIONS

**TABLE OF CONTENTS**

I.  SUMMARY OF THE RESPONSE.................................................................................. 2

II.  ARGUMENTS AND AUTHORITIES.......................................................................... 4

    A.  Default judgment as a discovery sanction is a draconian measure, a last resort and not appropriate in this case............................................................................... 6

        1.  The Undavia Defendants have not engaged in any willful or bad faith...... 8

            a.  The Court has already, necessarily concluded that there was no bad faith conduct up to and through the January 3, 2008 hearing. 8

            b.  The Undavia Defendants produced general ledgers for 1999-2006............................................................................................. 9

            c.  The Undavia Defendants produced  tax returns, IRS releases, and information on tax preparers. ...................................................... 9

            d.  The Undavia Defendants produced 1099s and W-2s................. 12

            e.  The Undavia Defendants produced stock certificates and ledgers 14

            f.  The Undavia Defendants were entirely reasonable with regard to the inspection of the pharmacy .................................................. 14

            g.  The cases Travelers relies upon demonstrate precisely why judgment is not proper here........................................................ 16

        2.  Travelers has not suffered substantial prejudice and it has not demonstrated that a lesser sanction would not suffice, if warranted at all 19

    B.  Travelers' allegations of "fraud on the court" by the Undavia Defendants are unsupported and reveal the frivolous nature of its motion.................................... 20

        1.  There is no evidence of bad faith or willful abuse of the judicial process 21

        2.  The Undavia Defendants timely produced the 1998 declaration, and Travelers offers no more than its own review on the "meaning" of the Longhoffer E-Mail and royalty agreements............................................. 23

        3.  The Undavia Defendants have not engaged in fraud on the bankruptcy court........................................................................................................ 25

        4.  The Undavia Defendants have not engaged in fraud on the divorce court 27

i

5.      Travelers presents no evidence of fraud upon the court regarding tax deductions and no evidence of actual "tax fraud"..................................... 27

6.      Travelers satisfies no additional "fraud on the court" factors................... 29

III.    CONCLUSION ............................................................................................ 30

4081107.1
56253.2

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Aoude v. Mobile Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) ......................................................... 22

*Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462 (W.D. Tex. 2006) ............................... 19, 21

*Batson v. Neal Spelce Assocs. Inc.*, 765 F.2d 511 (5th Cir. 1985) ............................................... 19

*Bonaventure v. Butler*, 593 F.2d 625 (5th Cir. 1979) .................................................................. 16

*Chambers v. Nasco*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ................................. 21

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007) .......... 18

*Derzack v. County of Allegheny*, 173 F.R.D. 400 (W.D. Pa. 1996) ........................................ 22, 29

*E.F. Hutton & Co. v. Moffatt*, 460 F.2d 284 (5th Cir. 1972) ......................................................... 7

*Emerick v. Fenick Industrs., Inc.*, 539 F.2d 1379 (5th Cir. 1976) ........................................... 6, 18

*Eppes v. H.E. Snowden*, 656 F.Supp. 1267 (E.D. Ky. 1986) ......................................................... 22

*In re Hargis*, 887 F.2d 77 (5th Cir. 1989) ...................................................................................... 5

*McCleod, Alexander, Powell & Apffel v. Quarles*, 894 F.2d 1482 (5th Cir. 1990) ..................... 17

*Neely v. Commissioner of Internal Revenue*, 116 T.C. 79 (U.S. Tax Court 2001) ....................... 28

*Plasticsource Workers  Comm. v. Coburn*, No. 07-50399, 2008 U.S. App. LEXIS 2440
(5th Cir. 2008, Feb. 1, 2008) ........................................................................................................... 8

*Pope v. Federal Express Corp.*, 138 F.R.D. 675 (W.D. Mo. 1990), *aff'd in relevant part*,
974 F.2d 982 (8th Cir. 1992) ......................................................................................................... 22

*Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984) ................................. 29

*Ridgle v. Lowe's Home Centers, Inc.*, 2005 U.S. Dist. LEXIS 17514
(N.D. Tex. August 19, 2005) .......................................................................................................... 19

*SEC v. First Houston Capital Resources Fund, Inc.*, 979 F.2d 380 (5th Cir. 1992) ..................... 7

*Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1989) ................................................................. 8, 16

4081107.1
56253.2

*United Artists Corp. v. Freeman*, 605 F.2d 854 (5th Cir. 1979) .................................................... 7

*United States v. Caldwell*, No. 3:92-CV-1045-H, 1993 U.S. Dist. LEXIS 3256
(N.D. Tex. Mar. 9, 1993) ................................................................................................. 6, 20

*United States for Use of M-CO Const., Inc. v. Shipco General, Inc.*, 814 F.2d 1011
(5th Cir. 1987) .................................................................................................................... 7

*Woodson v. Surgitek, Inc.*, 57 F.3d 1406 (5th Cir. 1995) ............................................................. 7

## STATUTES

11 U.S.C. § 329 ............................................................................................................................ 26

## MISCELLANEOUS

Adam J. Seigel, *Note: Setting Limits On Judicial Scientific, Technical, and Other
Specialized Fact-Finding in the New Millennium,* 86 Cornell L. Rev. 167, 183 (2000) ................ 4

Restatement (Third) of the Law Governing Lawyers § 134 ......................................................... 5

iv

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| Shaffin Ali Mohamed; aka Ali | § | |
| Mohamed, et al | § | |
| Debtor(s) | § | Lead Case No. H-07-1122 |
| | § | Judge Sim Lake |
| Travelers Indemnity Company, et al | § | Magistrate Judge Nancy K. Johnson |
| Plaintiff(s) | § | (Adversary No. 06-3393) |
| v. | § | |
| Mohamed Shaffin Ali, et al | § | |
| Defendant(s) | § | |

| | | |
|---|---|---|
| In re: | § | Member Case No. H-07-995 |
| Shaffin Ali Mohamed, et al | § | Judge Sim Lake |
| Debtor(s) | § | Magistrate Judge Nancy K. Johnson |
| | § | (formerly Case No. 05-42695-H2-11) |

| | | |
|---|---|---|
| The Travelers Indemnity Company, | § | |
| Plaintiff | § | Member Case No. 4:07-CV-00638 |
| v. | § | Judge Sim Lake |
| Shaffin Ali Mohamed, M.D., et al | § | Magistrate Judge Nancy K. Johnson |
| Defendant(s) | § | |

## THE UNDAVIA DEFENDANTS' RESPONSE TO TRAVELERS' MOTION FOR CASE TERMINATION SANCTIONS

TO THE HONORABLE JUDGE JOHNSON:

Defendants Khyati Undavia, Minu Rx, Ltd. and Minu GP, LLC (collectively, the "Undavia Defendants") submit this Response to Travelers' Motion for Case Terminating Sanctions Against the Mohamed and Undavia Defendants and Request for Evidentiary Hearing in Support Thereof.   Docket #171.   In support of this response, the Undavia Defendants show the following:

4081107.1
56253.2

I.    SUMMARY OF THE RESPONSE

Travelers' motion should be denied. It is no more than a smear campaign with the goal of influencing the Court's decision on the Undavia Defendants' pending motions.[1] Why else would Travelers hurl unsupported accusations, like that Undavia must have done something improper by investing in expensive jewelry? *See* docket #171 at 27 ("there can be no legitimate explanation for most of these checks;" "[t]hese checks make no sense for several reasons").[2] These accusations do not relate to Travelers' claims about compounding of prescription pain medications or Mohamed's purported ownership in Minu Rx, much less any alleged obstruction of justice. And why else would Travelers make the serious allegation of tax fraud that the government has certainly never alleged, that Travelers has not proved, and that has absolutely nothing to do with its claims in this case or allegations of "fraud on the court?" Travelers is simply slinging mud, all at the expense of the Court and the Undavia Defendants' time and money. Judged on the law, and for all of the reasons stated herein, Travelers' motion fails.

Travelers seeks to impose the draconian sanction of default judgment under Rule 37(b)(2(A) for alleged violations of discovery orders and under the Court's inherent sanction authority for the Undavia Defendants having supposedly "tried at every turn to obstruct Travelers from learning the truth about [their] bankruptcy fraud, perjury, obstruction of justice, tax fraud, and healthcare fraud." Docket #171 at 56. Travelers cannot cut off the Undavia Defendants' fifth amendment right to a hearing on the merits; not on the record it tries to construct.

---

[1] The Undavia Defendants' Motion to Dismiss (docket #75) and Motion for Reconsideration and to Compel (docket #138) are pending.

[2] While it may create additional technical accounting work, there is nothing illegal in and of itself about an officer making personal expenditures from a business account.

2

First, Travelers cannot satisfy even the most fundamental standards for the sanction of judgment under Rule 37(b)(2)(A).  The Undavia Defendants have not violated a discovery order, much less engaged in deliberate or bad faith refusals to comply with discovery orders.  To the contrary, the Undavia Defendants have complied with the single and only discovery request ever served on them (a pre-suit subpoena) and every verbal instruction the Court has given (save part of one instruction which is the subject of a pending motion for reconsideration).  The Undavia Defendants have even permitted an on-sight, videotaped inspection of the Minu Rx pharmacy without Travelers ever being required to comply with Rule 34(b) (requiring that a request to permit entry shall set forth items to be inspected, and describe each with reasonable particularity, and that a responding party have 30 days to object).  In short, Travelers confuses the Undavia Defendants' exercise of their right not to submit to absolute and unqualified obedience to every Travelers request with some failure to comply with discovery.

Second, Travelers is not entitled to judgment on the grounds that the Undavia Defendants somehow "defiled" the Court by engaging in "bankruptcy fraud, perjury, obstruction of justice, and tax fraud" or that they obstructed Travelers from "learning the truth" of Mohamed's alleged interest in Minu Rx.  Docket #171 at 48, 56, 60.  In fact, when stripped of the accusations against Mohamed, what remains are unsupported allegations that reveal the frivolous nature of Travelers' motion.  As for Travelers' claim that it, despite obstruction, has finally unveiled the "truth" (i.e., that Mohamed is an owner in Minu Rx), that is merely a legal conclusion based on Travelers' own interpretation of various documents produced by the Undavia Defendants themselves.    Travelers' motion should be denied and fees awarded to the Undavia Defendants for the time and expense incurred in filing this response.

3

## II.   ARGUMENTS AND AUTHORITIES

Travelers is intent on trying to persuade the Court that its version of the facts is correct, even going so far as to encourage the Court to conduct its own investigation which is of course entirely inappropriate.[3]   That issue aside, Travelers' motion defies logic.   Travelers spends the first 75% of its 60 plus page brief insisting that it can *now* prove what it alleged — that Mohamed is a partner in Minu Rx.   In support of its story, Travelers relies on financial documents produced by none other than the Undavia Defendants. Then, with indignation, Travelers demands judgment as a sanction because it claims the Undavia Defendants have stonewalled, lied and violated this Court's orders to produce financial documents.   Docket #171 at 49.   The truth is that Travelers frequently expands the scope of the documents it wants, often during hearings or informally rather than pursuant to the Rules.   To keep up with Travelers' ever changing requests is like following a moving target.

For example, Travelers' pre-suit subpoena *never* asked for tax returns, yet Travelers asked for them in informal discussions with Minu Rx's former counsel and he agreed to use his best efforts on behalf of Minu Rx to provide them.   Similarly, after the Court ordered production of IRS releases (based on Travelers' incorrect suggestion that all produced returns were unsigned), Travelers, through email, informally asked Undavia to produce her personal returns at the same time, even though Travelers never before asked for them and even though the Court

---

[3] *Cf.* docket #171 at 7 ("For a quick peek … the Court need look no further than the website …. If the Court clicks on the box … it will link …. [I]f the Court clicks on the icon for …."), *with* Adam J. Seigel, Note: *Setting Limits On Judicial Scientific, Technical, and Other Specialized Fact-Finding in the New Millennium*, 86 Cornell L. Rev. 167, 183 (2000) (observing that "[a] close examination of the Code of Conduct for United States Judges and 28 U.S.C. 144 and 455 . . . reveals that these authorities contain general provisions intended to preserve the integrity of the adversarial system, to prohibit independent factual investigations, and to ensure that judges remain impartial and unbiased.") (emphasis added).

4

had not ordered the production of them[4].  Undavia agreed, though they have not been extended the same courtesy by Travelers.[5]  And now, despite Travelers' history of moving the discovery target, the Undavia Defendants' good faith efforts to produce responsive documents, and the fact that Travelers has virtually every document it has asked for that exists, it files a motion for case-ending sanctions based on discovery obstruction.

The motion also defies logic in terms of supposed "fraud on the court."  Every allegation of fraud on the bankruptcy and divorce courts is premised on Mohamed owning an ownership interest in Minu Rx—as if this were a truism, when if fact this is one of the key facts that Travelers must actually prove.  Absent any finding by this Court that Mohamed actually owns an interest in Minu Rx, the notion that Minu Rx allegedly made payments to third parties that either directly or indirectly benefited Mohamed is of absolutely no consequence.  There is no bankruptcy crime or fraud or fraud on the court when a third party steps in to pay any or all of the debts of a debtor in bankruptcy—including that debtor's legal fees[6]. *In re Hargis*, 887 F.2d 77 (5th Cir. 1989) ("[T]here exists no statute or rule proscribing the payment of pre-petition debts with non-estate assets.... Nor is there any general bankruptcy policy that is disserved by permitting such payments."); *Restatement (Third) of the Law Governing Lawyers* § 134 cmts. b and c (2000) (a third party can pay the legal fees of an individual if client consents and lawyer's duty of loyalty is preserved).  Similarly, there is no fraud or fraud on the court when a third party steps in to make payments that directly or indirectly benefit a person engaged in a hotly

---

[4] Travelers will often couch these requests for additional documents as "threats" that it will simply come to this Court and have the Court "order" the production of the requested documents if the Undavia Defendants do not simply voluntarily comply exactly with the new request.

[5] The Undavia Defendants served Travelers with a letter request for documents back in November 2007.  Travelers never responded, and in a January 22 hearing insisted on formal written requests: "All I said to her was submit a request under Rule 34 and 33.  Let's do discovery, and we'll respond that way.  *** And I'm doing this to be formalistic. ... If she puts in a production request, we will respond when we're required to." *See* Exhibit B at 32-33

[6] The Undavia Defendants are by no means conceding or agreeing that Travelers' version of the "facts" is true, but are merely making the point that any third party may pay the debts of a debtor in bankruptcy without civil or criminal repercussions.

contested divorce.[7]  The bottom line is that Minu Rx, if owned wholly by Undavia, and not by Mohamed as Travelers has yet to prove and this Court has yet to find, may pay *anyone* with its revenues—even Mohamed's creditors—if it chooses to do so.  Short of a finding that Mohamed actually owns an interest in Minu Rx, Travelers has no basis for accusing the Undavia Defendants of "fraud on the court."  Travelers' motion should be readily denied and financial sanctions imposed against it for forcing the Undavia Defendants to respond.

**A.**     **Default judgment as a discovery sanction is a draconian measure, a last resort and not appropriate in this case.**

Whether contemplated under Rule 37 or under the inherent authority of the Court, default judgment as a discovery sanction is a draconian measure of last resort.  Rule 37(b)(2) permits a court to issue such orders as are just to sanction a party who fails to obey an order to provide or permit discovery.  FED. R. CIV. P. 37(b)(2)(A).  "The discretion of the district court to order sanctions under Rule 37(b)(2) is broad but not unlimited." *Emerick v. Fenick Industrs., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976).

> The due process clause of the fifth amendment limits the power of courts to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause. *Societe Internationale v. Rogers,* 357 U.S. 197 … (1958). … When, as here, a defendant's pleadings are stricken, an appellate court's review should be particularly scrupulous lest the district court too lightly resort to this extreme sanction amounting to judgment against the defendant without an opportunity to be heard on the merits.

*Emerick*, 539 F.2d at 1381.  As such, entry of default judgment as a sanction, whether under Rule 37 or otherwise, is considered a "draconian" measure which the court "should impose only as a last resort …." *United States v. Caldwell,* No. 3:92-CV-1045-H, 1993 U.S. Dist. LEXIS 3256, *3 (N.D. Tex. Mar. 9, 1993), *quoting, United States for Use of M-CO Const., Inc. v. Shipco General, Inc.,* 814 F.2d 1011, 1014 (5th Cir. 1987).

---

[7] *See* footnote 5 above; a third party may pay a person money, or may pay debts of that person, even if that person is engaged in a hotly contested divorce, without civil or criminal repercussions.

Given the constitutional rights at issue in a motion for default judgment under Rule 37(b) or under the Court's inherent authority to issue sanctions for discovery misconduct, the Fifth Circuit has not hesitated to reverse default judgments entered hastily against defendants. *See, e.g., SEC v. First Houston Capital Resources Fund, Inc.*, 979 F.2d 380, 382-83 (5th Cir. 1992) (vacating default judgment against defendant for failure to appear for pretrial conference because no evidence of "brazen defiance" and trial court did not consider less drastic measures); *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979) (reversing default judgment against defendant who refused discovery and his own deposition because no evidence resistance was willful or deliberate disregard); *E.F. Hutton & Co. v. Moffatt,* 460 F.2d 284 (5th Cir. 1972) (reversing default judgment against defendant because no evidence that single delay was intentionally dilatory, plus record supported equally plausible, less reprehensible reason for delay); *Caldwell,* 1993 U.S. Dist. LEXIS 3256 at *4-5 (reversing Rule 37 default judgment against defendant for willful violation of spirit of order because less severe sanctions would suffice).

In deciding whether to grant a default judgment as a sanction, the court should consider (1) whether a violation has occurred, (2) the willfulness of the alleged violation, (3) the efficacy of less drastic sanctions in upholding the goals of Rule 37(b), (4) prejudice caused to the opposing party, and (5) whether the violation is traceable to the client. FED. R. CIV. P. 37(b)(2)(A); *Caldwell,* 1993 U.S. Dist. LEXIS at *4, *quoting, Shipco General,* 814 F.2d at 1013; *Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1417 (5th Cir. 1995) (case-terminating sanctions require a showing of "bad faith or willful abuse of the judicial process"); *Plasticsource Workers Comm. v. Coburn,* No. 07-50399, 2008 U.S. App. LEXIS 2440, *7-8 (5th Cir. 2008, Feb. 1, 2008).

1.    **The Undavia Defendants have not engaged in any willful or bad faith violation of any discovery order.**

7

Travelers claims the Undavia Defendants are violating orders to produce all tax returns, general ledgers, IRS release forms, stock certificates and ledgers, and contact information for any individuals who provided booking, accounting and tax services. Docket #171 at 56. When each item is examined, however, it is clear that the Undavia Defendants have complied with each order (and sought partial relief from the Order to provide IRS Releases), and that there is no evidence of bad faith. "In making its 'bad faith' determination, the district court [is] entitled to rely on its complete understanding of the parties' motivations." *Id.* at *12, *citing, Smith v. Smith,* 145 F.3d 335, 344 (5th Cir. 1989).

> **a.    The Court has already, necessarily concluded that there was no bad faith conduct up to and through the January 3, 2008 hearing.**

Travelers already moved to compel *and* for sanctions over production of 1099s, W-2s general ledgers, and retained copies of tax returns. Docket # 69. The Court granted the motion but *denied* the request for sanctions, meaning the Court has already concluded that there was no conduct worthy of sanctions up to and through the January 3, 2008 hearing. Docket # 81; Exhibit A (Jan. 3 hearing transcript); Exhibit B at 51 (Jan. 22 hearing transcript noting the Court intended to include W-2s in Order). A summary of what led to that ruling is attached as Exhibit C.

Because of Travelers' complaints about subsequent productions, it is important to note that (1) the pre-suit subpoena never included a request for any tax returns, and (2) the subpoena request for 1099s and W-2s was for those related to certain prescribing doctors, not employees of Minu Rx. Exhibit D (pre-suit subpoena); Exhibit B at 51 (January 22 hearing transcript). Nevertheless, once the Court instructed that the Undavia Defendants produce such items, they were produced.

      **b.**      <u>**The Undavia Defendants produced general ledgers for 1999-2006.**</u>

The Undavia Defendants have complied with the January 3 Order by producing general ledgers for the pharmacy for each year requested:

<u>January 17, 2008</u>:      Minu RX, Inc. General Ledger as of 12/31/01
                      Minu RX, Inc. General Ledger as of 12/31/02
                      Memorial Compounding Pharmacy General Ledger 12/31/03
                      Memorial Compounding Pharmacy General Ledger 12/31/04
                      Memorial Compounding Pharmacy General Ledger 12/31/05
                      Memorial Compounding Pharmacy General Ledger 12/31/06

<u>February 8, 2008</u>:      Minu Rx, Inc. General Ledger Detail Report for period ending 12/31/99
                      Minu Rx, Inc. General Ledger Detail Report for period ending 12/31/00

*See* <u>Exhibits E</u> (production letters). As Travelers is aware, Minu Rx, Inc. was converted to Minu Rx, Ltd. in 2005. Docket #66 at ¶111. Therefore, ledgers do not exist for both entities for each year. The ledgers that exist for the pharmacy, regardless of which entity title it had, were produced. And for 2007, there is no ledger that the client has been able to locate and she does not believe any exists. Further, Minu GP, LLC, which was formed in 2005, is the general partner of Minu Rx, Ltd. *Id.* at ¶112. Undavia cannot locate any ledgers for that entity and does not at this time believe any exist. Accordingly, every ledger that is believed to exist has been produced.

      **c.**      <u>**The Undavia Defendants produced tax returns, IRS releases, and information on tax preparers.**</u>

By producing for each year requested and for each defendant either signed tax returns *or* an IRS release, the Undavia Defendants have complied with the intent and reasons for the January 3 Order to produce returns.[8] Initially, the Undavia Defendants produced corporate returns, some of which were not signed. Travelers suggested to the Court that *none* of the

---

[8] As explained further in <u>Exhibit C</u>, Travelers' pre-suit subpoena did not even include a request for Minu Rx tax returns; rather, that was a request Travelers made in conversations with Minu Rx's prior counsel. Travelers also never asked for Undavia's personal tax returns until long after the Court ordered Minu Rx to produce its returns and then releases. *See* <u>Exhibit C</u>.

returns were signed and, based on this misinformation, convinced the Court, eventually, to order production of IRS releases. *See* docket #138. The Undavia Defendants went ahead and produced releases for the years for which signed returns were not available but also filed a Motion for Reconsideration of Order to Produce IRS Releases. *See* discussion, *infra*. The Court has not yet ruled on the motion for reconsideration. In summary, the Undavia Defendants produced tax material as follows:

January 17, 2008:    2001 Tax Returns for Minu Rx, Inc. (signed)
                     2002 Tax Returns for Minu Rx, Inc. (signed)
                     2003 Tax Returns for Minu Rx, Inc. (signed)
                     2004 Tax Returns for Minu Rx, Inc. (signed)
                     2005 Tax Returns for Minu Rx, Ltd. (not signed)
                     2006 Tax Returns for Minu Rx, Ltd. (not signed)

February 8, 2008:    1999 Tax Returns for Minu Rx, Inc. (not signed)
                     2000 Tax Returns for Minu Rx, Inc. (not signed)
                     2000 Amended Tax Returns for K. Undavia and husband (signed)
                     2000 Tax Returns for K. Undavia and husband (not signed)
                     2001 Tax Returns for K. Undavia and husband (signed)
                     2002 Tax Returns for K. Undavia and husband (signed)
                     2003 Tax Returns for K. Undavia and husband (signed)
                     2004 Tax Returns for K. Undavia and husband (signed)
                     2005 Tax Returns for K. Undavia and husband (not signed)
                     2006 Tax Returns for K. Undavia and husband (not signed)

February 12, 2008:   1999 IRS Release for Minu Rx, Inc.
                     2000 IRS Release for Minu Rx, Inc.
                     2005 IRS Release for Minu Rx, Ltd. and Minu GP, LLC
                     2006 IRS Release for Minu Rx, Ltd. and Minu GP, LLC
                     1999 IRS Release for K. Undavia
                     2006 IRS Release for K. Undavia

Exhibit E (production letters). Thus, the only item not produced was a personal IRS release for Khyati Undavia for the year 2005.[9] This was an inadvertent oversight and no fault of Undavia or counsel. *See* Verification attached hereto. As a courtesy to Travelers, the personal 2005 IRS Release has now been produced. Exhibit E (letter dated March 20, 2008). This supplemental

---

[9] Neither Minu Rx or Undavia's 2007 taxes have been filed.

10

production is a courtesy because, the production of Undavia's personal tax returns was *voluntary* to begin with and *not* ever requested under Rule 34 or ordered by the Court.  Rather, Travelers requested Undavia's personal returns for the first time in an E-Mail on January 25.  <u>Exhibit F</u> (E-Mail dated 1/25/08).  Undavia did produce them voluntarily only days later, save the one oversight, and yet Travelers is asking this Court to impose judgment against her for obstructing discovery.  Travelers should be held responsible for having filed such a blatantly improper request.

Finally, Travelers complains that the Undavia Defendants produced no contact information for their tax preparers.  Docket #171 at 55.  The tax returns themselves state that they were "self-prepared" except for certain years, and on those returns (which were produced) the preparers' information is specifically identified:

> <u>1999 Minu Rx, Inc. Tax Return:</u>
> Prepared by Levin, Gilbert & Williams, LLP
> 5821 Southwest Freeway, #400
> Houston, Texas 77057
>
> <u>2000 Minu Rx, Inc. Tax Return:</u>
> Prepared by Levin, Gilbert & Williams, LLP
> 5821 Southwest Freeway, #400
> Houston, Texas 77057
>
> <u>2001 Personal Tax Return and Minu Rx, Inc. Tax Return:</u>
> Prepared by Denise Brigance, CPA
> 3231 Allen Parkway, Apt. 2302
> Houston, Texas 77019

*See* <u>Exhibit E</u>.  Additionally, another accountant, Krupal Patel, has assisted at some level with financial information and his first name was raised before with Travelers and the Court in an off-record discussion (*see* docket #171 at 55), and thus there has been no obstruction obtaining such information.  Undavia further believes Krupal moved to New York about a year ago, but

Undavia has lost touch with him and has no address.  Travelers is free to probe further as would be permitted under the rules of discovery.

Given the good faith production of returns, releases, and tax preparers' contact information, Travelers cannot be heard to complain that they do not have what they need and certainly are not entitled to judgment as a sanction.

### d.    The Undavia Defendants produced 1099s and W-2s.

The Undavia Defendants complied with the subpoena, the January 3 Order and the January 22 clarification of that Order (that production should include 1099s and W-2s for individuals other than certain prescribing doctors[10]) by producing:

| | | |
|---|---|---|
| November 21, 2007: | 2006 | 1099 from Minu Rx, Ltd. to Shanti Pain & Wellness Clinic |
| | 2005-2006 | 1099s from Minu Rx, Ltd. to Tim Chaudhary |
| | 2005-2006 | 1099s from Minu Rx, Ltd. to Will Moorehead |
| | 2005-2006 | 1099s from Minu Rx, Ltd. to Kenneth Baylis |
| | | |
| January 17, 2008: | 2003 | total of nine 1099s for Minu Rx, Inc. |
| | 2004 | total of seventeen 1099s for Minu Rx, Inc. |
| | 2005 | total of thirteen 1099s  for Minu Rx, Ltd., and |
| | 2006 | total of twenty 1099s for Minu Rx, Ltd. |
| | | |
| January 25, 2008: | 2001 | fourteen W-2 Wage & Tax Statements for Minu Rx, Ltd. |
| | 2002 | sixteen W-2 Wage & Tax Statements for Minu Rx, Ltd. |
| | 2003 | seventeen W-2 Wage & Tax Statements for Minu Rx, Ltd. |
| | 2004 | seventeen W-2 Wage & Tax Statements for Minu Rx, Ltd. |
| | 2005 | eighteen W-2 Wage & Tax Statements for Minu Rx, Ltd. |
| | 2006 | thirteen W-2 Wage & Tax Statements for Minu Rx, Ltd. |
| | | |
| February 8, 2008: | 1999 | seventeen W-2 Wage & Tax Statements for Minu Rx, Inc. |

Exhibit E (production letters).  The Undavia Defendants cannot locate any 1099s or W-2s for the pharmacy general partner, Minu GP, LLC.  Thus, the only W-2s not produced that are believed

---

[10] On January 22, 2008, Travelers complained that it had not received 1099s and W-2s for Minu Rx contractors or employees, but the subpoena had only ever sought those documents with regard to certain prescribing doctors.  The undersigned explained:  "I understood that you [the Court] said W-2's and 1099's.  I thought you meant for the doctors.  That was the focus of the hearing.  And that absolutely … the focus is – is on the doctors.  I didn't understand that that meant for the employees.  We'll go ahead and check on that."  Exhibit B at 51 (January 22 hearing transcript).

to exist are for the year 2000 for Minu Rx. Undavia made a good faith effort to search for W-2s from that year and cannot locate them. Minu Rx produced an IRS Release for 2000, and if that form is not sufficient for obtaining W-2s from the IRS then it will execute one that is sufficient.

Importantly, the Undavia Defendants produced W-2 Wage and Tax Statements in *unredacted* form, and consequently those documents contain each employee's name, address, wage information and even social security number. Despite this fact, Travelers complains that the Undavia Defendants failed to include employee names on their Rule 26 disclosure. Docket #171 at 52. But in their Rule 26 disclosure, the Undavia Defendants unequivocally state that they "hereby name each and every individual and entity who appear or who can be identified or located from the documents and tangible items that are produced in this cause." Exhibit J at 12 (Rule 26 disclosure excerpt). Given this specific incorporation and the fact that Travelers has the information it says it wants, it is difficult to see why it thinks it is entitled to judgment as a sanction for an *initial* Rule 26 disclosure. In fact, with W-2s containing employees' wage information and social security numbers, Travelers has more information about those persons than it would otherwise have received via a Rule 26 disclosure, and it received the information a week early since the Undavia Defendants' Rule 26 disclosure was not due until February 6, 2008. *Id.*

      e.      **The Undavia Defendants produced stock certificates and ledgers.**

The requested stock certificates and ledgers were available for Travelers' inspection during the pharmacy inspection but Travelers did not request to examine them. Exhibit K (E-Mail dated February 5). *See* Fed. R. Civ. P. 34. The fact that Travelers has not elected to come

review them at any other mutually agreeable time cannot possibly serve as a basis for a sanction

of judgment against the Undavia Defendants.

        **f.**      <u>**The Undavia Defendants were entirely reasonable with regard to the
inspection of the pharmacy.**</u>

      Travelers is in no position to complain about any alleged delay in inspecting the

pharmacy.  In fact, Travelers' own conduct in this regard should be considered in assessing what

sanctions, if any, should be imposed and on which party.

      Travelers served a Notice of Request to Inspect on January 11, 2008, noticing the

inspection for a mere eleven (11) days later and providing *none* of the particulars required by

Rule 34.  Rather, the notice generically stated:

> PLEASE TAKE NOTICE that Plaintiff Travelers Indemnity Company
> ("Travelers"), by and through its attorneys … and pursuant to Federal Rule of
> Civil Procedure 34(a)(2), hereby requests that on January 23, 2008 at 10:00 a.m.,
> it be allowed to inspect the MINU RX, Ltd. premises, located at 2918 San Jacinto
> Street, Houston, Texas 77004.

<u>Exhibit G</u>.  Rule 34 is clear.  The requesting party must specify the item(s) to be inspected, and

"describe each with reasonable particularity," and the responding party has 30 days to make a

written response and any objections.  Fed. R. Civ. P. 34.  Travelers entirely ignored its obligation

under the rules and consequently the undersigned advised there was no agreement.

      Then, with no prior notice and during a hearing on motions regarding *other defendants*,

Travelers' counsel totally surprised the Undavia Defendants' counsel and insisted on addressing

the notice for inspection.  <u>Exhibit B</u> at 21 (January 22 hearing excerpt:  "I see Ms. Rothman in

the back of the courtroom. I'd like to ask her something real quick.  And perhaps we can resolve

something …. ").  Over the Undavia Defendants' counsel's objection, on the record and before

this Court, to having to address such an important issue with absolutely no notice, Travelers

proceeded to address its request to inspect the pharmacy and suggested that the Undavia

14

Defendants were unreasonably objecting to it. *Id.* at 23.  Then, suggesting in the subtext of its

argument that the same information had been conveyed to the undersigned, Travelers stated *for*

*the first time* everything its notice had left out:

> And so what we would like to do, Judge, is go *videotape* an inspection of her
> pharmacy *to try to identify the equipment* that you would typically see with
> manufacturing, as opposed to compounding: buckets, vats, bins that are holding
> these things in storage.  And that's important, Judge, because what we've alleged
> in our complaint is that these drugs were medically unnecessary and they knew it
> …. Because they're being mass produced. … And in response to that, I [get] that
> we have no agreement on – on an inspection.[11]

*Cf.* Exhibit B at 22-23 (January 22 hearing) *with* Exhibit G (notice).   In response, the

undersigned counsel explained that although this was the *first* articulation of the information

required under Rule 34, in the end it would accommodate the inspection with the limitation that

Travelers not be permitted to dig through the pharmacy:

> That's the first time I've heard that reason – that reason for his request. *** [H]e
> just said I want to do an inspection.  I said follow the procedure …. Then he
> addressed it this way.  The notice wasn't sent properly [sic], we hadn't sufficient
> time.  All that aside, I just want to make your Honor aware of what's going on
> before we get to the courthouse.  I don't have a problem with it.  I will check
> with my client. …  I don't want them going in there and rooting through the
> pharmacy. *With that limitation*, I'm more than happy to accommodate it.

Exhibit B at 25-26.  After the hearing and conferring with the client, the undersigned offered

dates and more dates with specific notations as to which days were not agreeable.  Exhibit H (E-

Mail dated January 30, 2008 discussing dates offered).  Travelers' counsel unilaterally said on a

Monday it would show up that Thursday, booked his flight and dogmatically suggested that

someone else besides the undersigned could appear for the inspection.  *Id.*   This was not

agreeable particularly in light of counsel's previously expressed limitation that she had to confer

---

[11] In making this statement Travelers essentially has admitted it had no evidence to support its allegation of
"manufacturing" before it filed its Complaint against the Undavia Defendants and that it needed to inspect the
pharmacy to determine if there was any basis for that claim.  The entire discovery process to date has been an
exercise to see if Travelers can in fact support with fact the allegations hurled in its Complaint.

with the client and the protective order needed to be modified. *Id.* The Court held an off-the-record hearing on February 1, and Travelers was permitted an inspection the very next morning without any prejudicial delay. Yet Travelers *still* wants to complain about it.[12]

> **g.    The cases Travelers relies upon demonstrate precisely why judgment is not proper here.**

The cases relied upon by Travelers show what can amount to bad faith and, by comparison, demonstrate precisely why judgment is not justified as a discovery sanction here. For instance, *Smith* involved a party who had been held in civil and criminal contempt for failure to appear at his scheduled deposition, failure to appear at his deposition as ordered by the court, and failure to personally appear for a show cause hearing. *Smith*, 145 F.3d at 344. Somewhat similarly, in *Bonaventure*, a party failed to appear for his deposition, filed a motion for protection when it was re-set, did the same thing when it was re-set a second time, and then ultimately failed to appear for the deposition when ordered by the court. On review, the Fifth Circuit stated: "In light of [the party's] repeated, deliberate refusals to appear for the deposition, the district court did not abuse its discretion ...." *Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979).

Nothing even close to what occurred in *Smith* and *Bonaventure* has occurred here. The Undavia Defendants have not been found in contempt of court and have not repeatedly refused to appear for deposition or hearing, much less have they refused the discovery request for documents they have received. Quite the opposite. They have produced more than 22,000 documents in response to the pre-suit subpoena, made consistently good-faith efforts to comply

---

[12] Travelers does not even stop there. Travelers raises in its motion the fact that during the inspection some of Mohamed's personal belongings were stored in a room adjacent to the pharmacy. Docket #171 at 54. Travelers long ago raised this with the Court, and Mohamed's counsel told the Court he understood that the bankruptcy trustee was fully informed of that. Exhibit I at 8-9 (February 1, 2008 transcript).

16

with every Court instruction to them, never been sanctioned by the Court and assured the Court

the following:

> But I want to be very clear, and I don't want to lay behind the log. I want to be
> transparent to the Court.
>
> ***
>
> [I]f we go back to the documents that I've been producing since before my client
> was a party, there is vastly more than what has been requested, because I tried to
> address the reasons he was asking me for certain things. ... [H]e said he wanted
> to prove my client was actually manufacturing this – these compounds [as
> opposed to compounding on an individual basis]. I gave him delivery logs to
> show that the patients were getting their [sic] [prescriptions]. So there's actually
> more there than what they've – what they've asked for. And I just want to be
> clear about that.

Exhibit B at 30, 52 (January 22 hearing).

Travelers relies on yet another case that actually demonstrates that judgment under Rule

37(b)(2)(A) is in no way justified here. In *McCleod, Alexander, Powell & Apffel v. Quarles* the

court imposed default judgment because a party objected *entirely* to discovery, did so again after

being ordered to provide substantive responses, told the Court its docket control order could not

serve as a deadline for the disputed discovery, and never produced a single requested document

in 13 months of litigation. 894 F.2d 1482, 1484 (5th Cir. 1990). Again, by stark contrast, the

Undavia Defendants have never entirely refused discovery that the court has ordered, and they

certainly have not evaded production. Rather, the Undavia Defendants have exercised their

rights under the Rules and opposed certain requests in whole or in part, but then have produced

thousands of documents in response to the first and only discovery request for documents they

have received and have otherwise appropriately participated in the discovery process.[13]

---

[13]  In *Emerick*, another case relied upon by Travelers, the Fifth Circuit appears to have disapproved of the district court's imposition of judgment but had no basis for finding reversible error because the trial court found the party to be "unbelievably flagrant" in failing to comply with a discovery order, and it further noted that rendering judgment might deter others from similar conduct, although a lesser sanction would likely have worked with that particular party. *Emerick*, 539 F.2d at 1381.

17

Finally, the Ninth Circuit case Travelers claims is so factually similar to this one is entirely *not* when it comes the to reasons the court entered default judgment.  In *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, the Ninth Circuit affirmed a default judgment against a defendant *and* his lawyer because they had (1) engaged in "bad faith in connection with the filing and prosecution of the bankruptcy petition [filed during the litigation]," (2) they exhibited "years of evasive discovery obligations," and (3) engaged in a "fraud on the court" when they photocopied a docket sheet so as to cut off and misrepresent a critical date to the Court, and when the issue was raised they did not confess error or file a reply but instead took a year and a half to file an errata with the Court.  482 F.3d 1091, 1094 (9th Cir. 2007).  In upholding the default judgment the Ninth Circuit explained:

> The most critical factor to be considered in case-dispositive sanction is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'

*Id.* at 1097 (internal citation omitted).

Here, not only have the Undavia Defendants *not* done even one of the things that the defendant and his lawyer did in *Conn. Life,* when the court's "critical factor" (whether a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts) is applied, the answer is a resounding "no."  The Undavia Defendants have produced *eight* years of tax returns and releases, financial ledgers, W-2s, 1099s, not to mention that their bank records have been subpoenaed, and that they have produced over 22,000 pages of prescription-related reports on the very issues Travelers sued over, *and* they complied with a videotaped inspection of their pharmacy with no limitations. [14]  And the case against them

---

[14] Travelers has also subpoenaed several third parties to whom Undavia or Minu Rx have written checks or with whom either has engaged in any personal or business transaction.  They have totally pried into Undavia's personal and private life and that of her friends, employees and colleagues with limited to no formal objection from her.

18

is barely four months old.  Under the circumstances, it is Travelers that deserves to be sanctioned for forcing the Undavia Defendants to file this response.

### 2.    <u>Travelers has not suffered substantial prejudice and it has not demonstrated that a lesser sanction would not suffice, if warranted at all.</u>

Before imposing judgment as a sanction under Rule 37(b), a court must find that the alleged misconduct caused substantial prejudice to the opposing party.  *Batson v. Neal Spelce Assocs. Inc.,* 765 F.2d 511, 514 (5th Cir. 1985); *Arista Records, L.L.C. v. Tschirhart,* 241 F.R.D. 462, 464-465  (W.D. Tex. 2006).  Travelers does not identify any substantial prejudice by virtue of the Undavia Defendants' discovery conduct.   Indeed, thanks to the Undavia Defendants production, Travelers has been able to write some 48 pages of a story it wants to be true — this being perhaps the motive behind filing the motion in the first place.   It can hardly claim substantial prejudice.

Finally, the drastic measure of imposing default judgment is only to be employed where (if appropriate at all) a lesser sanction would not be appropriate or substantially achieve the desired deterrent effect.  *Arista Records,* 241 F.R.D. at 464-465.  Travelers has not pointed to one order that the Undavia Defendants have outright disobeyed or failed to comply with in bad faith.   Under such circumstances, *no sanction* is appropriate and certainly, even if the Court thought some sanction was warranted, only a sanction lesser than dismissal would be appropriate.  *See Ridge v. Lowe's Home Centers, Inc.,* 2005 U.S. Dist. LEXIS 17514, *11 (N.D. Tex. August 19, 2005) (because defendant had not disobeyed a court order, a sanction lesser than dismissal was appropriate); *United States v. Caldwell,* No. 3:92-CV-1045-H, 1993 U.S. Dist. LEXIS 3256, *4-5 (N.D. Tex. Mar. 9, 1993) (reversing Rule 37 default judgment against defendant for willful violation of spirit of order because less severe sanctions would suffice).

**B.**   **Travelers' allegations of "fraud on the court" by the Undavia Defendants are unsupported and reveal the frivolous nature of its motion.**

In addition to seeking judgment under Rule 37 for purported discovery violations, Travelers also seeks judgment under the court's inherent authority to issue sanctions for "fraud on the court." Tellingly though, rather than organize its motion by the alleged fraud on the court the Undavia Defendants supposedly engaged in, Travelers tells a long and often unsupported saga in chronological fashion so as to taint the Undavia Defendants with every supposedly fraudulent move by Mohamed.[15]   When teased out, the allegations against the Undavia Defendants of fraud upon the court are few in number, unsupported, and reveal the frivolousness of Travelers' motion.

Additionally, the "truth" Travelers claims the Undavia Defendants tried to avoid (that Mohamed is purportedly a partner in Minu Rx) is simply *Travelers' (and/or its counsels') interpretation* of various documents. Travelers' interpretation of documents cannot serve as the foundation for a fraud on the court allegation. In other words, every one of Travelers' fraud on the bankruptcy and divorce courts allegations is premised on the notion that Mohamed owns an undisclosed interest in Minu Rx. But Travelers has no evidence stating such and no judge or jury has held that Mohamed owns part of Minu Rx. Therefore, Travelers has no basis for accusing the Undavia Defendants of "fraud on the court."

**1.**   **There is no evidence of bad faith or willful abuse of the judicial process.**

---

[15] For example, Travelers suggests Mohamed must be an owner because "Minu RX (not Mohamed) produced a 1099 to Thompson & Knight from 2003, indicating that Minu RX (not Mohamed) paid a law firm for its advice" concerning Mohamed's compliance with the Division of Workers Compensation new disclosure requirements. Docket #171 at 16.   Travelers conclusion is *pure* conjecture and even irrelevant to the basis for its motion. But Travelers includes such speculation because it is intent on a story it wants to be true without first going through discovery. The fact is Thompson & Knight has been counsel for Minu Rx *and* Undavia.. *See* Exhibit L (Statement of Counsel).   Moreover, even if Minu Rx had paid legal bills for Mohamed this does not "prove" Mohamed owned an interest in Minu Rx.   That is simply circular reasoning at its best.   If Mohamed owns no ownership interest in Minu Rx, it matters not that the latter may have paid the legal bills of the former.

20

The court's inherent authority to regulate litigation and manage its docket exists in addition to the sanctions available under specific statutes or Rules.  Because of their very potency, however, inherent powers "must be exercised with restraint and discretion."  *Arista Records*, 241 F.R.D. at 464, *quoting Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).  Further, "[t]his inherent power arises only when the litigation is instigated or conducted in bad faith or when the litigant or counsel 'willfully abuse judicial processes.'  In the context of the federal court's inherent power, 'bad faith' is judged by 'necessarily stringent' standards."  *Id.* (citations omitted).[16]

The type of bad faith or fraud on the court that warrants judgment as a sanction is fabrication of evidence or lying to the Court, usually coupled with repeated discovery abuse, which is why judgment is in no way warranted here.  For example, the Supreme Court affirmed the Fifth Circuit's judgment against a defendant in *Chambers v. Nasco* because his "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court ..."  *Id.* at 51.  Specifically, the defendant recorded deeds in a fraudulent effort to deprive the court of jurisdiction; he withheld that information when the court inquired about the status of the property; he defied a preliminary injunction by refusing to allow an inspection of corporate records; he had been warned repeatedly by the court that his conduct was unethical and had been fined; he nonetheless proceeded with a series of meritless motions and pleadings and delaying actions which triggered further warnings from the court; and he filed a motion to recuse the judge in an effort to delay the trial.  *Id.* at 37-39.

Similarly, a party in *Aoude v. Mobile Oil Corp.* perpetrated a "fraud on the court."  892 F.2d 1115 (1st Cir. 1989).  There, the plaintiff fabricated a purchase agreement, gave it to his

---

[16] And, a party against whom default judgment is imposed as a sanction must be afforded notice and due process.  *Chambers v. Nasco*, 501 U.S. 32, 49, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

lawyer, and then knowingly allowed and authorized his attorney to attach the fake agreement to the complaint as a basis for the lawsuit. *Id.* at 1118-1119. Only months after the truth became evident in discovery did he ask to amend his complaint to substitute the real agreement for the invented one. *Id.; see also, e.g., Pope v. Federal Express Corp.,* 138 F.R.D. 675 (W.D. Mo. 1990), *aff'd in relevant part,* 974 F.2d 982 (8th Cir. 1992) (dismissal warranted under inherent authority where plaintiff in sexual harassment lawsuit manufactured evidence by altering documents to create document laden with sexual content); *Derzack v. County of Allegheny* , 173 F.R.D. 400 (W.D. Pa. 1996) (fabricating tax returns constituted fraud on the court and warranted dismissal); *Eppes v. H.E. Snowden,* 656 F.Supp. 1267 (E.D. Ky. 1986) (backdating letters to support counterclaim constituted fraud on the court requiring dismissal as only proper remedy).

Here, the Undavia Defendants have not fabricated documents or lied to or defied the Court.[17] Travelers *wants* to say the Undavia Defendants have lied in denying that Mohamed is an owner in Minu Rx, but again, Travelers has no document stating such and no judge or jury has ever made that finding. Nor have the Undavia Defendants obstructed discovery or been warned by the Court that their conduct is unethical or sanctionable. To the contrary, when Travelers sought monetary sanctions as part of its motion to compel the Court denied the request. Docket #81 (Order denying motion for sanctions). The alleged wrongdoing is overstated and based solely on *Travelers'* biased interpretation of what certain documents "mean."

---

[17] Travelers tries to suggests that the Undavia Defendants fabricated W-2s by taking a W-2 template from 2007 and hand writing over the "7 in black marker with the last digit of the year they claimed to be producing .... Travelers can only guess where the Undavia Defendants got the information to fill-in the W-2s." Docket #171 at 53 (attaching one example and further redacting personal information). Not only has Travelers already *unsuccessfully* made this very accusation in Court in an off-the-record hearing, but its accusation does not even make sense. If the Undavia Defendants were trying to fabricate a document and mislead Travelers or this Court, why would they use an obvious black marker to change the year? *See* Docket #171 (Exhibit 77). Surely they would have tried a little harder if that was the goal. As the undersigned explained in the off-record hearing on February 1, 2008, the W-2s were printed from a computer system which defaults to the year for which tax returns are due (here, 2007). The client wrote over the 2007 to indicate the correct year for each W-2. Travelers also alleges that Mohamed and Undavia "manufactured" the royalty agreement between Mohamed and Minu Rx, but as discussed below, Travelers lacks actual proof rather than conjecture about that *and* that is certainly no manufacturing of a document to this Court.

22

2.      **The Undavia Defendants timely produced the 1998 declaration, and Travelers offers no more than its own view on the "meaning" of the Longhofer E-Mail and royalty agreements.**

Travelers wrongly accuses the Undavia Defendants of obstructing production of a 1998 declaration.  Docket #171 at 4-5.  The Undavia Defendants complied precisely with what the Court ordered, and in any event, the document does not reveal ownership by Mohamed as Travelers claims.

During a January 3, 2008 hearing, the Court approved a protocol for the production of documents from the files of Aaron Keiter (who previously represented Minu Rx) pursuant to a subpoena issued by Travelers to him individually.   The protocol required the Undavia Defendants to produce all non-privileged, responsive documents pertaining to the Undavia Defendants within fourteen (14) days of the date upon which the Undavia Defendants established contact with Keiter in connection with the subpoena.  Exhibit A at 39 (line 3) – 40 (line 20) (January 3 hearing transcript).  Furthermore, the Undavia Defendants were to produce a privilege log setting forth the privileged documents withheld from production based upon applicable privileges as to the Undavia Defendants.  Id.  Contact was first made with Keiter by the Undavia Defendants on January 11, 2008. Two weeks later, on January 25, 2008, the Undavia Defendants timely produced to Travelers a disc containing documents responsive to the subpoena (MRX022815 - MRX022857) along with their Privilege Log.  Exhibit E (production letter).  Among the documents produced to Travelers that day was the 1998 declaration (MRX 022823 – MRX022824), attached as Exhibit 3 to Travelers' Motion.

Furthermore, the 1998 declaration does not reveal that Mohamed was a partner in Minu Rx.  First, the document contemplates a transfer of shares to Shirin Mohamed, not Shaffin Ali

Mohamed, and second, there is no evidence that transfer of shares occurred.[18]   *See* Docket #171 (Exhibit 3).

Travelers further insists that Mohamed and the Undavia Defendants must be perpetrating a fraud on the court because an E-Mail from attorney Carla Longhofer "proves" Mohamed was a partner in Minu Rx.  Docket #171 at 14-16.  In that communication (which was not even directed or copied to Undavia or Minu Rx), Longhofer does not conclude or state that Mohamed is an owner in Minu Rx as Travelers states in its motion as if it were fact as opposed to Travelers' interpretation.  Docket #171 (Exhibit 9).  Rather, she is discussing the fact that in Mohamed's divorce proceeding his wife's lawyer will make such an argument.  *Id*.  There is a difference, yet in true story-telling fashion, <u>Travelers misquotes Longhofer's E-Mail by changing words and omitting critical language</u> to give the impression that it was fact that Mohamed had part ownership in Minu Rx:

| Travelers' brief, misquoting Longhofer's E-Mail | Longhofer's Actual E-Mail |
|---|---|
| "Longhofer's e-mail makes clear that they were concerned that Deborah Mohamed would reveal in the divorce proceeding that Mohamed owned half of Minu Rx because he had '*been taking a 50/50 split [of Minu Rx's income] which is de facto ownership.*'"  Docket #171 at 15 (original emphasis). | "Even if you have an agreement, they will try to make the argument that because you have been taking a 50-50 split it is de facto ownership."   Docket #171 (Exhibit 9 at NA011928). |

Travelers is hardly entitled to judgment as a sanction for the Undavia Defendants' purported fraud on the court when Travelers itself misrepresents the facts to the Court in its motion.

Finally, in conclusory fashion, Travelers claims that the royalty payments under the Royalty Agreement between Minu Rx and The Pain Institute represent amounts compensating Mohamed for his interest in the pharmacy rather than for his expertise in developing formulas for

---

[18] Since no shares were actually transferred to Shirin Mohamed, much less Shaffin Ali Mohamed, the document was not responsive to the pre-suit subpoena which sought corporate structure documents and documents reflecting any ownership Mohamed may have.  <u>Exhibit D</u> (pre-suit subpoena).

the pain medication compounds.  Docket #171 at 16-18.  Again, Travelers' allegations are based on pure conjecture and *its interpretation* of the agreement.  There has been no such conclusion by any judge or jury.  Furthermore, Travelers ignores the fact that Mohamed had health care attorneys at  Thompson and Knight involved in the formulation of the agreement and that the equally plausible explanation for the agreement is that it is precisely what it purports to be.  *See* Exhibit N at NA013247.

### 3.   The Undavia Defendants have not engaged in fraud on the bankruptcy court.

Travelers also indignantly accuses the Undavia Defendants of fraud on the bankruptcy court, but when all of the accusations against Mohamed and empty remarks are cast aside, the *only* allegation that any Undavia Defendant itself perpetrated some kind of fraud on the bankruptcy court relates to a Proof of Claim against Samsher Flight for a loan.  Docket #171 at 27 and Travelers' Exhibit 33.  Travelers alleges the Proof of Claim was "false" because there was no loan but rather "payments were made by Undavia to purchase Mohamed's interest in Samsher Flight." *Id.* at 26-27.  As support for this characterization, Travelers relies on the fact that several payments were made and on a letter signed by Undavia. *Id.* 26 (Exhibit 29).  But the letter does not prove that the payments were for a purchase rather than for a loan.  The letter states in relevant part:

> I will begin, effective immediately, to take over payments on the aircraft.
> Additionally, please begin drafting documents to exercise my option to purchase
> Dr. Mohamed's interest in Samsher.

Docket #171 (Exhibit 29).  Making payments on the aircraft owned by Samsher does not mean that an option to purchase Mohamed's share in Samsher was executed, no more than making rent payments on a house would mean the payor was purchasing the property.  Absent evidence that

the payments were purchase payments and not a loan, Travelers' motion on this point fails miserably. In short, its arguments are based on conjecture, not facts.

The only other allegations against the Undavia Defendants regarding fraud on the bankruptcy court relate to payments, loans or transfers that Minu Rx made to Boyd, Ramji, Breezy[19] and SHR, and a residential property in San Antonio that Undavia purchased in her name.[20] Docket #171 at 23-24, 36-39. Travelers essentially accuses the Undavia Defendants of aiding Mohamed in defrauding of the bankruptcy court and his creditors. But Travelers' accusations are premised on the idea that the money paid, loaned or transferred was not Minu Rx's money or Undavia's money to begin with but rather that the money was really owed to Mohamed as part owner of Minu Rx. Again, that is Travelers' interpretation of various documents, but it has no document stating that Mohamed is an owner in Minu Rx and no judge or jury has ever reached that conclusion. Short of such proof, *and* short of proof that the Undavia Defendants knowingly did anything that could be construed as bankruptcy fraud, Travelers is hard pressed to claim it is entitled to judgment for the Undavia Defendants committing some kind of fraud on the bankruptcy court.

---

[19] Travelers claims the payments to Breezy were used to pay Dean Ferguson, Mohamed's bankruptcy counsel, and that such payments were not disclosed to the bankruptcy court. Docket #171 at 23. If some failure of disclosure or bankruptcy approval occurred, that was in no way conduct attributable to the Undavia Defendants. Rather, that failure, if any would rest with Mohamed or with the bankruptcy lawyer himself. *See* 11 U.S.C. § 329 ("Any attorney representing a debtor … shall file with the court a statement of the compensation paid or agreed to be paid … and the source of such compensation."); FED. R. BANKR. P. 2016(b) ("Every attorney for a debtor … shall file … the statement required by § 329 of the Code…."); 3 COLLIER ON BANKRUPTCY § 329.02[2] (15th ed. rev. 2007) ("Section 329 does not utilize language to subject nonattorneys to its strictures.").

[20] Travelers' circular arguments apply to the San Antonio property as well. Travelers concludes that because Undavia signed the mortgage documents "Khyati Undavia Mohamed," because she does not use the property as her primary residence, and because entities with ties to Mohamed made deposits into her account that she set up for the property, Mohamed must be the true owner. First, like the mortgage documents, Undavia's driver's license and pharmacy license are still under the name Khyati Undavia Mohamed (*see* Exhibit M). So what. That hardly proves Mohamed owns the home. Second, Undavia did not end up using the property as her primary residence. So what. That does not prove that Mohamed owns the home. Finally, the deposits into the account are merely rent for his use of the property and thus equally innocuous. There simply can be no fraud on the bankruptcy court or any court in such a transaction when Travelers presents no proof of anything at all inappropriate.

26

4.      **The Undavia Defendants have not engaged in fraud on the divorce court**.

Travelers also goes so far as to accuse the Undavia Defendants of defrauding the divorce court that heard Mohamed's divorce from his *second* wife.[21]   Similar to the bankruptcy fraud allegations, the divorce court allegations relate to Minu Rx paying money to Newbury Personnel and the residential property in San Antonio that Undavia purchased in her name.   Travelers claims such transactions were really just a way to funnel to Mohamed his share of Minu Rx funds and that the transactions allowed Mohamed to defraud his second wife and the divorce court.   Docket #171 at 24-25, 37.   Again, Travelers' accusation is premised on the unproven conclusion that the money was not just Minu Rx's or Undavia's to do with as they pleased but that it was really Mohamed's money as part owner in Minu Rx.   No document says he is an owner and no judge or jury has concluded that.   Furthermore, Travelers presents no evidence of any knowing conduct on the Undavia Defendants' part that could support some fraud on the divorce court.   Absent such, Travelers has no basis to accuse the Undavia Defendants of fraud on the divorce court.

5.      **Travelers presents no evidence of fraud upon the court regarding tax deductions and no evidence of actual "tax fraud."**

Travelers claims that the Undavia Defendants somehow engaged in tax fraud that should be considered a fraud on this court.   Specifically, Travelers claims the Undavia Defendants (1) took tax deductions on payments to Cita, NC Consulting, New Frontier and Breezy as "goods provided" when the payments were really kickbacks and/or ownership payments to Mohamed; and (2) took tax deductions on payments to prescribing physicians as "consulting" fees when the

---

[21] Undavia was Mohamed's first wife.  She came to the United States from India when she was a teenager.  When she met and married Mohamed she converted to Islam, causing much of her family to disown her.  After having two children together Undavia learned Mohamed was unfaithful and they divorced in 1997.

payments were really kickbacks for compound pain prescriptions[22]. Docket #171 at 12-14, 18-23. Not only do Minu Rx's tax deductions have *nothing* to do with Travelers' claims in this case regarding compounding pain medications, but there has been no finding by anyone that the expenses are not precisely what they claim to be. Travelers' position is flawed in two additional and critical ways.

First, tax fraud does not exist simply because Travelers says it does. Tax fraud must be proved by clear and convincing evidence and requires a showing that (1) an underpayment in tax exists, and (2) that the defendant intended to conceal, mislead, or otherwise prevent the collection of taxes. *Neely v. Commissioner of Internal Revenue,* 116 T.C. 79, *86 (U.S. Tax Court 2001). Travelers has not made such a showing, much less by clear and convincing evidence. In fact, the tax deductions at issue are entirely consistent with the documented agreements. In other words, payments to prescribing doctors are deducted as consulting fees, and that is precisely what the Medical Director agreements provide for. Similarly, payments to Cita, NC Consulting and New Frontier were deducted as goods and indeed those entities sell ingredients for compounding. Travelers arguments alleging tax fraud would only be colorable if and only if a court were to first find the fees were something other than what they purport to be or the compound ingredients were not actually purchased by the pharmacy.

The second flaw in Travelers' position is that the deductions are somehow a fraud on this court. As described above, fraud on the court typically involves fabrication of evidence. For instance, the appellate court in *Derzack v. County of Allegheny,* concluded that the plaintiffs perpetrated a fraud on the court when they fabricated tax returns to trump up their alleged business loss and then tried to conceal their misdeeds. 173 F.R.D. at 404-412. Here, Travelers

---

[22] Travelers also claims improper tax deductions were taken on payments to Samsher as "travel and entertainment" when in reality they were payments to purchase Mohamed's interest in Samsher. But as discussed in section B. this biased and wrong conclusion formulated by Travelers about the Samsher payments can be easily dispelled.

does not allege that the Undavia Defendants fabricated their returns, so the concept of a fraud on the court does not fit.[23]

<strong>6.     Travelers satisfies no additional "fraud on the court" factors.</strong>

In addition to the prerequisite finding of bad faith, courts have considered additional other factors when deciding whether to impose judgment as a sanction under the court's inherent authority, including: (1) the extent of the party's personal responsibility; (2) the prejudice the adversary caused by obstructing discovery; (3) a history of dilatoriness; and (4) whether a lesser sanction would be effective. *See, e.g., Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 868-870 (3d Cir. 1984); *Derzack,* 173 F.R.D. at 413-418. These factors weigh decidedly against imposing judgment as a sanction. There is no evidence that any complaints Travelers has about discovery compliance are attributable to Undavia personally. Travelers identifies no prejudice to it of any substance. There is no history of dilatoriness. To the contrary, as explained above, the Undavia Defendants have responded to discovery and complied with the Court's instructions. Finally, Travelers fails entirely to articulate why a lesser sanction, if warranted at all, would not be effective. Given the absence of bad faith and these factors, Travelers' motion must be denied.

**III.   CONCLUSION**

Travelers' motion should be dismissed outright and fees should be imposed against Travelers for forcing the Undavia Defendants to file a response to their 62 page motion. Surely if Travelers had researched its position prior to advancing this motion it would know that nothing

---

[23] It also does not fit Travelers' generic allegations about Minu Rx paying money to various people who deposited the funds into a jewelry company account. Travelers makes no allegation of fraud on the court directly but suggests wrongdoing nonetheless. Docket #171 at 27-28 ("there can be no legitimate explanation for these checks …"). Such empty accusations cannot serve as a basis for default judgment against the Undavia Defendants—they could and should, however, serve as a basis for sanctions against Travelers for making frivolous and prejudicial claims. .

29

in this case warrants the sanctions Travelers has requested against the Undavia Defendants.  Its

blatant attempt to bias the Court should not go unpunished.

Respectfully submitted,

Marcy Lynn Rothman
Attorney-In-Charge
State Bar No. 17318500
Federal ID No. 12021
Brown McCarroll, L.L.P.
1111 Bagby, 47th Floor
Houston, Texas  77002
713-525-6281 direct
713-286-2121 fax
mrothman@mailbmc.com
**Attorney-in-Charge for Defendants, Khyati
Undavia, Minu Rx, Ltd., and Minu GP, LLC**

**Of Counsel:**

Lorinda Holloway
State Bar No. 0079825
Federal ID No. 37169
Brown McCarroll, L.L.P.
111 Congress, Suite 1400
Austin, Texas  78701
512-479-1149 direct
512-479-1101 fax

Marcy E. Kurtz
State Bar No. 11768600
Federal ID No. 776712
Bracewell & Giuliani, LLP
711 Louisiana, Suite 2300
Houston, Texas  77002
713-221-1206 direct
713-221-2121 fax

Christian F. Johnson
State Bar No. 24029636
Federal ID No. 705319
Brown McCarroll, L.L.P.
1111 Bagby, 47th Floor
Houston, Texas  77002
713-525-6281 direct
713-286-2121 fax

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document was electronically delivered to all counsel of record on this the 24th day of March, 2008.

CHRISTIAN F. JOHNSON

31

<u>VERIFICATION</u>

STATE OF TEXAS      )
                     )
COUNTY OF TRAVIS    )

Before me, the undersigned Notary Public, on this day personally appeared Christian Johnson, who, being by me duly sworn on oath deposed and said that: he is an attorney with Brown McCarroll, LLP; he assisted Khyati Undavia with the execution of IRS Release forms; the form for 2005 was overlooked at no fault of the client's or his; this oversight was not discovered until the preparation of the Undavia Defendants' Response to Travelers' Motion for Case-Terminating Sanctions.  These facts are within his personal knowledge and are true and correct.



_____
Christian Johnson

Subscribed and sworn to before me on the _20th_ day of March, 2008, to certify which witness my hand and official seal.

DEBBIE SOZA MUNOZ
MY COMMISSION EXPIRES
April 6, 2010

_____
Notary Public in and for the State of Texas

4080325.1
56253.2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| Shaffin Ali Mohamed; aka Ali | § | |
| Mohamed, et al | § | |
| Debtor(s) | § | Lead Case No. H-07-1122 |
| | § | Judge Sim Lake |
| Travelers Indemnity Company, et al | § | Magistrate Judge Nancy K. Johnson |
| Plaintiff(s) | § | (Adversary No. 06-3393) |
| v. | § | |
| Mohamed Shaffin Ali, et al | § | |
| Defendant(s) | § | |

| | | |
|---|---|---|
| In re: | § | Member Case No. H-07-995 |
| Shaffin Ali Mohamed, et al | § | Judge Sim Lake |
| Debtor(s) | § | Magistrate Judge Nancy K. Johnson |
| | § | (formerly Case No. 05-42695-H2-11) |

| | | |
|---|---|---|
| The Travelers Indemnity Company, | § | |
| Plaintiff | § | Member Case No. 4:07-CV-00638 |
| v. | § | Judge Sim Lake |
| Shaffin Ali Mohamed, M.D., et al | § | Magistrate Judge Nancy K. Johnson |
| Defendant(s) | § | |

## **ORDER**

On this day the Court considered Travelers' Motion for Case-Terminating Sanctions. The Court, after considering the motion and the response, finds that the motion should be DENIED in its entirety and that the Undavia Defendants' request for fees should be GRANTED.

IT IS THEREFORE, ORDERED that Travelers' Motion for Case-Terminating Sanctions is DENIED in its entirety and the Undavia Defendants' request for fees in the amount of $_____ is GRANTED.  Signed this _____ day of _____, 2008.

_____
Hon. Nancy Johnson, United States Magistrate
Southern District of Texas, Houston Division

32

4081107.1
56253.2